# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2354 | **DATE** | 11/17/2003 |
| **CASE TITLE** | Elizabeth Martinez vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion to reverse the Commissioner's final decision [14-1] is granted to the extent that this court reverses and remands the Commissioner's decision, but denied to the extent that plaintiff seeks a reversal and award of benefits.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 19 2003 date docketed | |
| | Notified counsel by telephone. | | | 17 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 11/18/2003 date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |


NOV 19 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 2354 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Elizabeth M. Martinez, seeks judicial review of the final decision of the Commissioner of the Social Security Administration that she was not entitled to Disability Insurance Benefits pursuant to 42 U.S.C. § 405(g). Before this Court is Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security, which seeks a reversal of the denial of her claim.[1] For the reasons set forth below, this Court reverses the Commissioner's final decision and remands this case for further proceedings.

### I. Procedural History

On August 23, 1999, Plaintiff applied for Disability Insurance Benefits ("DIB")[2], alleging disability due to diabetes with neuropathy, and obesity. (R. at 58.) Plaintiff alleged that she

---

[1] Both parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

[2] Disability Insurance Benefits provide a minimum level of benefits to persons under age 65 who: a) have a disability as defined in 20 C.F.R. § 404.1505; and b) qualify as fully insured by having sufficient Social Security earnings as provided in 20 C.F.R. § 404.130. *See* 20 C.F.R. § 404.320(b).

became disabled on February 1, 1998, but later amended her onset date to August 26, 1999. (R. at 58, 220.) Her initial application for benefits was denied and, upon review, Plaintiff's reconsideration request was also denied. (R. at 22, 26, 28.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. at 31.) The hearing was conducted on January 12, 2001, where Plaintiff, who was represented by counsel, a medical expert, and a vocational expert testified. (R. at 215-70.) On February 23, 2001, the ALJ rendered an unfavorable decision finding Plaintiff not disabled because she could perform a significant number of jobs in the national economy. (R. at 8A-8J.) This decision became the final agency decision when the Appeals Council denied Plaintiff's request for review. (R. at 4-5, 7.) *See* 20 C.F.R. § 422.210(a). Plaintiff now seeks judicial review of that decision.

## II. Background Facts

### A. Plaintiff's Background

Plaintiff was born on February 10, 1960, and was forty-one years old on the date of the ALJ's decision. (R. at 8E, 58.) She completed the ninth grade, and has a variety of past work experiences, primarily in the food service industry. (R. at 8E, 73.) Plaintiff has worked as a dietary aid, preparatory cook, food server, and shoe salesclerk. (R. at 73.) Her most recent job was as a pie decorator for an ice cream company in July, 1999. (R. at 90, 223-24.)

## B. Medical Evidence

Plaintiff suffers from type II diabetes mellitus, secondary to obesity. (R. at 122.) She also has peripheral neuropathy[3] which is related to the diabetes. Plaintiff stands just under 5'4" tall, (R. at 155), and has weighed variously from 249 pounds in 1991 to 230 pounds in 1999 (R. at 8F, 129, 155). She has elevated blood pressure, (R. at 156), and has complained of lower back pain, (R. at 119, 235).

Plaintiff has taken a variety of medications for her ailments. She has been prescribed Micronase for the diabetes, and later took Glucophage and Glucotrol. (R. at 110.) In 1998, Plaintiff's treating physician, Dr. David Lucks, noted that she was non-compliant in taking her prescription medication because of insurance problems and "also lack of interest in being on medication." (R. at 117.) Plaintiff lacks continuous insurance coverage. (E.g., R. at 80, 122.) She has also been prescribed Neurontin for pain associated with the neuropathy, but testified that she did not take it for more than a month due to its cost. (R. at 155, 248.) Additionally, Plaintiff's physician has advised increased exercise and dietary restraint.

In February 1998, prior to her alleged disability onset date, Plaintiff went to the doctor and complained of lower back pain on the right side. She reported that she did not know what had caused the strain, but stated that she did a lot of heavy lifting at her job. (R. at 119.) Dr. Lucks reported that Plaintiff had reproducible pain on lumbar flexion at 70 degrees, but

---

[3] Neuropathy is a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 29TH ED., 1212 (2000). Neuritis is the inflammation of a nerve, with pain and tenderness, anesthesia and paresthesias, paralysis, wasting, and disappearance of the reflexes. Id. at 1207.

negative straight leg raising and normal reflexes. (R. at 117, 119.) Plaintiff's diagnosis was low back strain and she was given a prescription for Flexeril and Dolobid. (Id.)

On August 26, 1999, the same date as her alleged disability onset date, Plaintiff went to Dr. Lucks after a considerable absence apparently resulting from insurance problems. (R. at 176.) She reported severe painful numbness and tingling in the toes of both feet which interfered with walking. (Id.) A physical exam revealed that she did not appear to have plantar fasciitis, did not have any foot ulcerations, and did have some dermatitis. (Id.) Dr. Lucks also noted very minimal neuropathic changes with decreased proprioception (receipt of stimuli). (Id.) He recommended that she undergo future blood tests, and indicated that if her diabetes were poorly controlled she might be a candidate for insulin.

One month later, Plaintiff again visited her doctor. Her blood sugar was 201, but the tests did not reveal abnormalities in other respects. (R. at 175.) The doctor reported that Plaintiff was taking Glipizide (Micronase) and Glucophage, and he increased her doses of those medications. (Id.) Plaintiff still complained of numbness and tingling in her toes. The doctor increased her dosage of Neurontin. (Id.)

On October 22, 1999, Plaintiff underwent a consultative exam by Dr. C.J. Wonais. (R. at 155-56.) Dr. Wonais noted that Plaintiff suffered from type II diabetes, elevated blood pressure, obesity and peripheral neuropathy. (R. at 156.) Plaintiff complained of burning and numbness in her feet which prevented her from walking or standing more than two hours. (R. at 155.) Plaintiff reported that she did not use an ambulatory aid. (Id.) Dr. Wonais observed that her range of motion in all major joints was normal. (R. at 156.) She was able to get on and off the examination table without any difficulty, able to walk from heel to toe, and was able to squat.

(Id.) Decreased sensation in her feet was noted, but the deep tendon reflexes were symmetrical and plantars were normal. (Id.)

Two residual functional capacity assessments ("RFC") were prepared in relation to Plaintiff's claim. The first of these is dated November 5, 1999. (R. at 157-62.) The report noted that Plaintiff first complained of pain in her feet to her primary physician in August of that same year. (R. at 162.) It also noted that the consultative physician stated that the exam was within normal limits except for decreased sensation in Plaintiff's feet. Plaintiff reported that she cooks on a daily basis, does laundry and vacuums several times a week, and does some shopping. (Id.) The report concluded that Plaintiff would be capable of performing a full range of medium work. The report was reviewed and signed, although not written, by a medical consultant.

The second RFC was completed on January 28, 2000. (R. at 163-70.) This report noted that Plaintiff suffered from diabetes and obesity but had no history of cardiac or respiratory distress due to excessive weight. (R. at 170.) The report concluded that given the signs of neuropathy and the indication of pain, Plaintiff was limited to performing light work. (Id.) She should avoid climbing ladders, ropes and scaffolds, and should not be exposed to hazardous machinery or unprotected heights. (Id.) The report was signed by a medical consultant. (Id.)

Plaintiff continued to visit Dr. Lucks during this same time. In November of 1999, Dr. Lucks indicated that because Plaintiff's blood sugar remained elevated she would be a good candidate for insulin therapy. (R. at 174.) He attempted to enroll her in a research study involving an experimental drug before resorting to the insulin, but the study was discontinued. (R. at 173, 174.) In February 2000, Plaintiff underwent a diabetic foot exam recommended by Dr. Lucks that revealed decreased sensation in the heels and toes, but no foot ulcerations. (R. at

190, 197.) Plaintiff reported that she felt a burning sensation with sharp pains in her feet. (Id.) She could not keep blankets on her feet at night due to the pain, and she had stopped wearing shoes because they were not comfortable, and instead wore thick socks with slippers. (R. at 190.) The examining nurse instructed her to wear proper diabetic footwear and attend classes for instruction on proper foot care. (Id.)

In June of 2000, Plaintiff visited a nurse in Dr. Luck's office for an educational session on diabetes. (R. at 186-87.) Plaintiff reported that she did not perform any aerobic exercise regularly, but did watch her twin grandchildren with whom she was "very active." (R. at 187.) She said that she was on her feet a lot. (Id.) Plaintiff also indicated that she was attempting to control her diet. (Id.) In July, Dr. Lucks decided that because Plaintiff's diabetes was poorly controlled she was ready for insulin management and should be weaned off the oral agents. (R. at 185.) In August, Plaintiff reported that her blood sugar had been much lower since she started taking the insulin. (R. at 204.) Dr. Lucks noted that her compliance with follow-up care remained "somewhat lacking." (Id.)

In November 2000, Dr. Lucks assessed Plaintiff's ability to do work-related activities. (R. at 210-12.) He opined that her foot and back pain prevented her from lifting or carrying more than 10-25 pounds, standing or walking for more than four hours, and that she should avoid heights and moving machinery. (Id.) He noted that her ability to stand and sit was limited due to back and feet problems. (R. at 212.)

In January of 2001, Dr. Lucks reported that Plaintiff was not compliant with her diet, but did take her medications. (R. at 213.) She denied symptoms of her diabetes other than the

neuropathic pains in her feet. (Id.) Dr. Lucks increased her insulin dosage, and again intrusted her to comply with a diet and exercise regimen to help manage her condition. (Id.)

### C. Plaintiff's Testimony

At the hearing in front of the ALJ, Plaintiff testified that she gets sharp pain in her feet which prevents her from standing for more than one hour. (R. at 8E, 234.) She also said that she was unable to sit for more than one-half hour because her back hurts, and that her doctor said the reason her back hurts is because of her feet. (R. at 8E, 235.) Plaintiff also testified that she takes over-the-counter aspirin for back pain up to three times a day. (Id.) She is unable to sleep at night because of pain in her feet and she cannot put a blanket on her feet. (R. at 8F, 240-41.) Her fingers started to tingle a week before the hearing and she believed it was due to the diabetes. (R. at 8F, 242.)

### D. Medical Expert's Testimony

A medical expert, Dr. James McKenna, testified at the hearing after reviewing the medical record and hearing Plaintiff's testimony. (R. at 243-57.) Dr. McKenna observed that Plaintiff's allegations of back pain were not supported by objective medical evidence such as imaging, tests, or pain medication. (R. at 254, 257.) He opined that although Plaintiff suffered from neuropathy, neither the severity nor Plaintiff's alleged intolerance for standing was established in the record. (R. at 249-50.) Dr. McKenna testified that in his opinion Plaintiff was limited to light work with occasional flexing, bending, and stooping. (R. at 256.)

### E. Vocational Expert's Testimony

Lee Knutson, a vocational expert ("VE") also testified. (R. at 258-70.) He was asked about the existence of jobs available to a person with Plaintiff's age, education, and work experience with these limitations: medium, light, or sedentary work, who should never utilize ladders, ropes and/or scaffolds, could occasionally climb, balance, stoop, kneel, crouch, or crawl, and should avoid unprotected heights and hazardous machinery. (R. at 261.) The VE testified as to each level of work. (R. at 262-63.) He was then asked about a person who could meet the demands of light work, and only occasionally could stoop and bend. Available jobs included production assemblers, machine tenders, cashiers, clerks, clerk helpers, sales and rental clerks, production inspectors, checkers, and weighers. (R. at 262-63.) He testified that light jobs require more than two hours of standing throughout a regular day, but that sedentary jobs would require less standing. (R. at 264-65.) The VE was also asked about a person who required a sit/stand option, or the ability to sit and stand as needed. (R. at 265.) He responded that most of the light jobs would be reduced by about sixty percent, and the sedentary jobs would be reduced by about ten to twenty percent. (R. at 266-67.) Finally, the VE was asked if the Plaintiff's testimony were credited and applied to the hypothetical person, would any jobs be available. (R. at 269.) The VE responded that the sit/stand jobs would be available to such a person.

### III. ALJ's Findings

The ALJ made the following specific findings (as taken verbatim from his February 23, 2003, decision):

> 1. The claimant met the insured status requirements under Title II of the Act at all times relevant to this decision.

2. The claimant has not engaged in disqualifying substantial gainful activity since her amended onset date.

3. The medical evidence establishes that the claimant has "severe" impairments which significantly limit her ability to perform basic work activities.

4. The claimant's impairments, according to the medical expert, do not meet or equal the severity of any listing in Appendix 1 to Subpart P, Regulations No. 4.

5. The claimant's allegations of disabling symptoms and limitations are not considered fully credible.

6. The claimant has the residual functional capacity to perform the requirements of light work with occasional stooping and bending.

7. The claimant has the ability to perform some past relevant work and also other work of a light or sedentary capacity.

8. The claimant is a younger individual.

9. The claimant has a limited education.

10. In view of the claimant's vocational characteristics and residual functional capacity, no medical-vocational rule directly applies. However the vocational expert identified jobs existing in significant numbers which an individual such as the claimant could perform.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

### IV. Discussion

Social Security regulations require that a claimant suffer from a disability within the meaning of the Social Security Act in order to receive Disability Insurance Benefits. An individual is disabled if she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To meet this definition, an individual must have a severe impairment which makes her unable to do her previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 404.1505(a). The determination of a disability involves both medical and vocational issues and requires a five-step process. The five steps are:

> Step 1: Is the claimant presently employed? If yes, the claim is disallowed; if no, the inquiry proceeds to step two.
>
> Step 2: Is the claimant's impairment "severe," and expected to last at least 12 months? If no, the claim is disallowed; if yes, the inquiry proceeds to step three.
>
> Step 3: Does the impairment meet or exceed one of a list of specific impairments? If yes, the claimant is automatically disabled; if no, the inquiry proceeds to step four.
>
> Step 4: Is the claimant able to perform her past relevant work experience? If yes, the claim is denied; if no, the inquiry proceeds to step five where the burden shifts to the Commissioner.
>
> Step 5: Is the claimant able to perform any other work within her residual functional capacity in the national economy? If yes, the claim is denied; if no, the claimant is disabled.

*See* 20 C.F.R. § 404.1520(a)(4); *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994).

The ALJ used this five-step process and found in favor of Plaintiff on steps one and two, but determined at step three that Plaintiff did not meet any of the listed impairments, and found at step four that Plaintiff can perform some past relevant work. (R. at 8I.) Furthermore, relying on Plaintiff's RFC and the VE's testimony, the ALJ concluded that Plaintiff could perform work of a light or sedentary capacity that existed within the national economy. (Id.)

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). However, the scope of review this Court must use is quite limited; the Commissioner's decision must be affirmed so long as it is supported by substantial evidence. *See Herron*, 19 F.3d at 333.

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's finding must be supported by more than a scintilla of evidence, but may be supported by less than the full weight of the evidence. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). The reviewing court must consider all evidence on the record; however, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, because the ALJ must resolve all factual issues and evidentiary conflicts. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993); *Delgado*, 782 F.2d at 82. Therefore, the critical question for this Court is not whether Plaintiff was disabled but whether there is substantial evidence in the record to support the Commissioner's decision. If reasonable minds could disagree on whether Plaintiff is disabled, we must affirm the ALJ's decision denying benefits. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

Plaintiff contests the ALJ's decision that she was not disabled. First, Plaintiff argues that the ALJ's RFC assessment was factually and legally incorrect because he failed to resolve inconsistencies between the two RFC's and because he ignored medical evidence relating to Plaintiff's neuropathy affecting her feet. Next, Plaintiff argues that the ALJ failed to consider

evidence favorable to her because he ignored medical evidence relating to her obesity. Finally, she argues that the ALJ propounded legally incorrect hypothetical questions to the VE by failing to include in the questions any of Plaintiff's impairments which were set forth in the medical record and by failing to identify the demands of the jobs set forth by the VE in order to compare those demands to the Plaintiff's physical capacities. Each of these arguments will be addressed in turn.

### A. The ALJ Erred in Failing to Resolve Inconsistencies in the Record and By Ignoring Medical Evidence Favorable to Plaintiff.

Plaintiff argues that the ALJ erred in his determination that the Plaintiff has the RFC for the requirements of light work with the restrictions that she could only occasionally stoop and bend. (R. at 81.) As support for her argument, Plaintiff points to the two RFC's that were prepared only a few months apart, the first of which concluded that she could perform a full range of medium work, and the second of which concluded that she could perform light work but should only occasionally balance, stoop, crouch, crawl, kneel, or climb ramps and stairs, should avoid exposure to hazards such as machinery and heights, and should never climb ladders, ropes or scaffolds. Both concluded that Plaintiff had the ability to stand or walk for up to six hours in a normal workday. In addition to coming to different conclusions regarding Plaintiff's RFC, these assessments also conflict with an assessment prepared by Plaintiff's physician which concludes that she cannot stand for more than four hours in an eight hour work day. At the hearing in front of the ALJ, the ME first appeared to adopt the assessment which concluded that Plaintiff could

perform medium work, but then amended his recommendation and agreed that the Plaintiff could only perform light work.

Residual functional capacity is that which a claimant can still do despite her physical limitations. 20 C.F.R. § 404.1545(a). The RFC is used to determine the claimant's ability to engage in the various levels of work. 20 C.F.R. § 404.1545(b). The ALJ bears the ultimate responsibility for weighing the evidence and determining physical limitations and RFC. 20 C.F.R. § 404.1527(e)(1)-(2); *Cichon v. Barnhart*, 222 F. Supp. 2d 1019, 1027 (N.D. Ill. 2002). Thus, the ALJ is not free to merely adopt the opinion of a medical source, but must support his conclusion with evidence contained in the record.

The ALJ in the instant case agreed with the medical expert's opinion that the Plaintiff could perform the exertional requirements of light work with occasional stooping and bending. Both the ALJ and the ME relied on the second RFC assessment, which opined that the Plaintiff could perform light work, as opposed to the first RFC assessment which opined that the Plaintiff could perform medium work. At first blush, this does not seem egregious, even though Plaintiff complains that the ALJ and the ME failed to discuss why they selected the second RFC over the first one. The second RFC was more favorable to Plaintiff, and even if the ALJ failed to discuss the first report, he still relied on an opinion that favored Plaintiff, so any error would appear to be harmless.

Nevertheless, the second RFC concluded that Plaintiff should only occasionally balance, stoop, crouch, crawl, kneel, or climb ramps and stairs, should avoid exposure to hazards such as machinery and heights, and should never climb ladders, ropes or scaffolds because her neuropathy had caused decreased sensation, pain, and discomfort. (R. 165, 167-68, 170.) In a

work ability assessment Plaintiff's physician also noted that Plaintiff should avoid heights because her balance was poor. (R. at 212.) It is undisputed that Plaintiff suffers from neuropathy, rather, the issue is how severe is the condition. At the hearing, the ME stated that the key issue to the neuropathy was whether Plaintiff's position sense was affected. (R. at 249.) He then noted that the Plaintiff's physician seemed to indicate that it had been affected because her balance was poor, but there were no tests to support this finding. However, the second RFC also seems to acknowledge that Plaintiff's balance was poor. While the ALJ is free to reject the treating physician's opinion where it is based solely on the claimant's statements about her functional restrictions, *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), and likewise can reject a consulting medical examiner's opinion, he must give reasons for rejecting evidence favorable to Plaintiff, while accepting evidence that weighs against her. *See Herron*, 19 F.3d at 333. As the Seventh Circuit has stated, the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ must clarify why he selectively relied on the second RFC and did not credit the treating physician's assessment of Plaintiff's ability to balance and stand when the record showed that Plaintiff suffered from neuropathy that had caused decreased sensation in her feet.[4] He should explain why he relied upon the conclusions of the ME, especially where the ME changed his opinion regarding Plaintiff's RFC in the middle of his testimony without giving reasons for changing it.

---

[4] If the record was incomplete regarding the severity of Plaintiff's neuropathy because certain tests had not been performed, the ALJ could have requested another consultative examination if it would have aided his decision. *See* 20 C.F.R. § 404.1512(d) & (e).

(R. at 252-56.) He needs to build the bridge between all the evidence in front of him and his conclusion that Plaintiff could walk or stand for up to six hours a day.[5]

Plaintiff also argues that the ALJ ignored medical evidence that was favorable to her. The ALJ must articulate reasons for accepting or rejecting entire lines of evidence. *Herron*, 19 F.3d at 333 (collecting cases). While the ALJ does not need to articulate his reasons for rejecting every single piece of evidence, he must at least minimally discuss evidence that contradicts his conclusion. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). In this case, the record is replete with references to Plaintiff's obesity. (E.g., R. at 121, 122, 124, 143, 155.) The ALJ acknowledged that Plaintiff was alleging disability due, in part, to obesity. (R. at 8E.) However, he does not discuss Plaintiff's obesity in the remainder of the opinion.

While obesity is not a listing level impairment, the effects of this disease must be taken into consideration in the analysis of other medically demonstrable impairments. *See* 20 C.F.R. § 404.1523 (ALJ must consider the combined effect of all of the claimant's ailments regardless of whether such impairment would be sufficiently severe if considered on its own); *Clifford*, 227 F.3d at 873-74. Additionally, the effects of Plaintiff's obesity should have been considered in the RFC determination. *See Clifford*, 227 F.3d at 874 (ALJ must not disregard significant conflicting evidence without sufficient reason in making RFC determination). The ALJ failed to

---

[5] While not raised by Plaintiff, the ALJ's cursory treatment of the factors described in 20 C.F.R § 404.1529 and Social Security Ruling 96-7p used to evaluate Plaintiff's credibility in her claims of disabling pain appears to be inadequate. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (it is not sufficient for the ALJ to make a single, conclusory statement that the allegations have been considered or that the allegations are (or are not) credible); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 838-39 (N.D. Ill. 2002) (ALJ must consider the claimant's statements about symptoms with the rest of the relevant evidence in the case record, including objective medical evidence, in coming to a credibility determination).

consider how Plaintiff's obesity affected her physical capabilities, specifically her ability to stand, walk, and sit, and the effect it might have on her neuropathy and her complaints of foot pain. Because we are unable to trace the ALJ's path of reasoning from the evidence to his conclusion, this case must be remanded for proceedings consistent with this opinion.

### B. The ALJ May Need to Ask Different Hypothetical Questions to the VE on Remand.

Plaintiff argues that the ALJ propounded incorrect hypothetical questions to the VE by failing to include in the questions any of Plaintiff's impairments and by failing to identify the demands of the jobs set forth by the VE in order to compare those demands to the Plaintiff's physical capacities. An ALJ is not required to include every one of the claimant's impairments in his question to the VE regarding the jobs the hypothetical person could reasonably perform. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). "All that is required is that the hypothetical question be supported by the medical evidence in the record." *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). Furthermore, a showing that the vocational expert reviewed the claimant's medical evidence and was present during the claimant's administrative hearing testimony supports a finding that the hypothetical question is supported by the medical evidence. *Ragsdale v. Shalala*, 53 F.3d 816, 818-21 (7th Cir. 1995). Thus, a hypothetical question need not incorporate every aspect of the claimant's impairments so long as the record supports the conclusion that the vocational expert considered the medical reports and documents. *Herron*, 19 F.3d at 337 (ALJ did not err in framing his question to the VE because the VE testified that he had reviewed the medical record prior to the hearing).

In this case, the VE was present throughout the hearing, reviewed the record, and heard Plaintiff's testimony. (R. at 259.) The ALJ asked the VE about the ability of a hypothetical person with Plaintiff's age, education, and work experience to engage in substantial gainful activities if that person could meet the demands of medium, light, and sedentary work, but should never utilize ladders, ropes, and/or scaffolds, could occasionally climb, balance, stoop, kneel, crouch or crawl, and should avoid unprotected heights and hazardous machinery. (R. at 261.) The ALJ asked about the hypothetical person's ability to meet the demands of light work if she could only occasionally stoop and bend. (R. at 263.) The ALJ also asked about the number of jobs available at the light and sedentary job levels if the hypothetical person needed the option to alternatively sit and stand, (R. at 265), and asked how many jobs would be available if the limitations alleged by Plaintiff were fully credited and applied to the hypothetical person, (R. at 269). The questions posed by the ALJ were thorough and appeared to question the many possible variation of the hypothetical person's ability to perform work. However, because we have already found that the ALJ erred in failing to consider the effects of Plaintiff's obesity, on remand, he should consider any possible effects of this impairment on the Plaintiff's ability to engage in substantial gainful activities as he questions the VE.

## V. **Conclusion**

For the above reasons, the Court reverses the Commissioner's final decision and remands the case to the ALJ for proceedings consistent with this opinion. Plaintiff's motion to reverse the Commissioner's final decision is granted to the extent that this Court reverses and remands the

Commissioner's decision, but denied to the extent that Plaintiff seeks a reversal and award of benefits.

**ENTER ORDER:**

													*[signature]*
													**MARTIN C. ASHMAN**
Dated: November 17, 2003.					United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| ASHLEY S. ROSE, Esq.<br>799 Roosevelt Road<br>Building 6, Suite 104<br>Glen Ellyn, IL 60137 | CURT P. MARCEILLE, Esq.<br>200 West Adams Street<br>30th Floor<br>Chicago, IL 60606 |
| Attorney for Plaintiff | Attorney for Defendant |